UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| GREG TAYLOR<br>   a/k/a STAR TAYLOR,<br><br>                  Plaintiff,<br><br>               v.<br><br>CHANEY Sgt.,<br>QUINN Ofc.,<br>HAULIN Officer,<br>DUKES Officer,<br><br>                  Defendants. | No. 2:23-cv-00527-JRS-MKK |

**ORDER**

Plaintiff Star Taylor is a prisoner currently incarcerated at Indiana State Prison. She moved for leave to amend her complaint on August 26, 2025, dkt. 86, and she filed her proposed amended complaint on September 9, 2025.[1] Dkt. 92. On September 22, 2025, the Court entered an order which warned Ms. Taylor "that her proposed amended complaint is devoid of" some of her previously averred facts. Dkt. 93 at 2. The Court provided Ms. Taylor through October 17, 2025, to file a new motion for leave to amend her complaint with a proposed amended complaint attached that included all claim she intends to pursue. *See* dkt. 93. The Court added that "[i]f no such motion is filed, the Court may grant her current motion and screen her amended complaint pursuant to [28] U.S.C. § 1915A." Ms. Taylor filed no such motion, and her motion for leave to amend her complaint, dkt. 86, is **granted**. The Court now screens her amended complaint. Dkt. 92.

---

[1] Ms. Taylor identifies as a transgender woman and uses she/her pronouns. The Court uses her preferred name and pronouns in this Order. *See Balsewicz v. Pawlyk*, 963 F.3d 650, 652 n. 1 (7th Cir. 2020) (using feminine pronouns in a manner "consistent with the district court's order and the parties' briefing in this case"); *see also Dyjak v. Wilkerson*, Nos. 21-2012 and 21-2119, 2022 WL 1285221, at *1 (7th Cir. Apr. 29, 2022) (explaining federal courts' "normal practice of using pronouns adopted by the person before [them]").

1

Additionally, her motions to reconsider the appointment of *pro bono* counsel, dkt. 103, and for the Court to take judicial notice of declarations, dkt. 104, are **denied**.

## I. Amended Complaint

### A. Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### B. Allegations

The Court accepts Ms. Taylor's factual allegations as true at the pleading stage, but not her legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)). She lists seven defendants: Nurse Peggy

Southwood; Centurion Health of Indiana, LLC; Sergeant Chaney; Officer Quinn; Officer Haulin; Officer Dukes; and Officer C. Pope.

The amended complaint alleges that Ms. Taylor, at all times relevant, an inmate at Wabash Valley Correctional Facility, is a "seriously mentally ill" inmate who has been diagnosed with schizoaffective bi-polar disorder, attention deficit disorder, gender dysphoria, post-traumatic stress disorder, and anxiety disorders. She also experiences a severe compulsion to self-harm, depression, suicidal ideations, and an inability to think clearly and make decisions. She has filed several lawsuits against prison officials in the past. Nurse Southwood has treated Ms. Taylor for approximately four years, during which time Ms. Taylor has attempted suicide.

Ms. Taylor was denied mental health evaluations for nearly three years and was housed in segregated housing for nearly two years, where male inmates could watch her use the restroom and change clothing and where she was denied access to personal property. She was not prescribed proper medication and desired breast augmentation surgery and hormone replacement therapy but did not receive a proper evaluation for inmates with gender dysphoria. Wellbutrin is a medication which proved effective for her in the past and which she is no longer prescribed. Centurion has an unwritten policy of refusing to prescribe suicidal inmates with effective medication and of changing how it defines "seriously mentally ill" as to avoid having to follow the agreement reached in another case before this Court.[2] In segregated housing, she received supervised mental health checks every thirty days. Her mental health condition, insufficiently treated, manifested in behaviors which require punishment and in self-harm. As of the averred events, she was not on

---

[2] The Court understands Ms. Taylor to refer to the settlement agreement reached in *Ind. Prot. & Advoc. Servs. Comm'n v. Comm'r, Ind. Dep't of Corr.*, No. 1:08-cv-1317 (hereinafter "*IPAS*"). The IPAS Agreement prohibited IDOC from housing seriously mentally ill inmates in segregation/restrictive housing for more than 30 days without taking certain steps to ensure the inmate's safety. *See IPAS*, No. 1:08-cv-1317, dkt. 496 at 4-5, 10-12.

suicide watch. Generally, Ms. Taylor's treatment violated the settlement agreement reached in the *IPAS* case.

On November 25, 2024, Ms. Taylor cut herself with a razorblade. Sgt. Chaney, Officer Quinn, Officer Haulin, Officer Dukes, and Officer Pope—who all knew of her mental health status and history—responded by making comments such as "suck my dick; I'll give you a shower," "the world would be a better place with one less f*g," and "you not done bleeding yet, f****t?" Dkt. 92 at 10 (censorship added). They did not address her bleeding, and Nurse Southwood never came to the cell to help. At approximately 4:30 a.m., an inmate came by her cell to ask why she had been yelling at officers all night. He saw her blood all over the cell and said, "It looks like someone has been murdered in [this cell]." *Id.* at 11. At least twelve hours passed before she was brought and admitted to Terre Haute Regional Hospital on November 26.

Despite the defendants' inadequate response to Ms. Taylor's self-harm, they continued to be assigned to supervise her. At one point over the next several weeks, Officer Quinn, Sgt. Chaney, and Officer Haulin used high power cell extraction gas on Ms. Taylor in her cell without warning and did not provide her decontamination cleaning of her person or her cell. Officer Pope denied Ms. Taylor's request for camera footage of this incident. Officer Quinn and Sgt. Chaney, on two separate occasions, filed misconduct reports against Ms. Taylor. Officer Quinn's report states that it was filed in retaliation against Ms. Taylor. Ms. Taylor has lost earned credit time as a result of misconduct reports.

Ms. Taylor was ultimately discharged from segregation. Officer Dukes told two inmates in Ms. Taylor's new housing unit to "beat [her] ass or stab [her.]" *Id.* at 16. These inmates indeed

4

attacked her in front of the chow hall. Despite no further misconduct, Ms. Taylor was transferred back to segregated housing two weeks later.

### C. Discussion of Claims

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), Ms. Taylor has identified the theories she wishes to use. She identifies claims of state law negligence and 42 U.S.C. § 1983 claims of First Amendment retaliation, Eighth Amendment deliberate indifference, Eighth Amendment excessive force, and Fourteenth Amendment equal protection violations. Where a *pro se* litigant has expressly stated the legal theories she wishes to pursue, a court is not required to analyze whether the allegations in a complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the Court analyzes Ms. Taylor's claims only under the theories she has identified.

Applying the screening standard to the factual allegations in the amended complaint, certain claims are dismissed while other claims shall proceed as submitted.

First, state law negligence claims **shall proceed** against Sgt. Cheaney, Officer Quinn, Officer Haulin, Officer Dukes, and Officer Pope. Nurse Southwood and Centurion, however, are plead as medical providers, and the Indiana Medical Malpractice Act requires that Ms. Taylor first seek review of her claims as to them by a medical review panel. *See, e.g.*, *Union Hosp. v. Reagin*, No. 25A-CT-49, 2025 WL 2319037, at *2-3 (Ind. Ct. App. Aug. 12, 2025). Because there is no

5

indication that she has done so, state law negligence claims as to Nurse Southwood and Centurion **are dismissed** for failure to state a claim upon which relief may be granted.

Second, First Amendment retaliation claims **shall proceed** against Officer Quinn.[3] Ms. Taylor generally alleges that other defendants engaged in retaliatory conduct by failing to timely treat her razorblade cut, keeping her in segregated housing, and filing misconduct reports. To state a First Amendment retaliation claim, Ms. Taylor "must ultimately show that (1) [s]he engaged in activity protected by the First Amendment; (2) [s]he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation and citation omitted). The protected activity that Ms. Taylor alleges she engaged in is litigation, and Officer Quinn's misconduct report is the sole activity with factual allegations to support a First Amendment retaliation claim. All other retaliation allegations are insufficiently conclusory, *see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."), so all other First Amendment retaliation claims **are dismissed** for failure to state a claim upon which relief may be granted.

Third, Eighth Amendment deliberate indifference claims **shall proceed** against Sgt. Chaney, Officer Quinn, Officer Haulin, and Officer Dukes based on Ms. Taylor's allegations that they were indifferent to her serious mental health needs, including self-harming behavior. Eighth Amendment deliberate indifference claims against medical defendants for refusing to provide anti-

---

[3] The Court previously notified Ms. Taylor "that her proposed amended complaint is devoid of her previously averred facts as to the First Amendment retaliation claim against Officer Quinn." Dkt. 93 at 2. Upon closer inspection of the amended complaint, however, the Court concludes that Ms. Taylor adequately states a retaliation claim against Officer Quinn. While facts alleged in her original complaint are indeed absent in the amended complaint, First Amendment retaliation claims still proceed against Officer Quinn.

depression medication and gender dysphoria treatment to Ms. Taylor were previously severed into *Taylor v. Verdon*, No. 2:25-cv-00039, *see* dkt. 66, which has since been dismissed without prejudice for failure to prosecute. *Taylor v. Verdon*, No. 2:25-cv-00039, dkt. 11 (S.D. Ind. July 22, 2025) (order dismissing case & directing entry final j.). Such claims against Nurse Taylor and Centurion are misjoined and shall either be severed into a new action or dismissed without prejudice. If a new action is opened, Ms. Taylor will be responsible for the filing fee associate with the new case, as she was with *Taylor v. Verdon*, No. 2:25-cv-00039.

Fourth, Eighth Amendment excessive force claims shall proceed against Officer Quinn, Sgt. Chaney, and Officer Haulin. Ms. Taylor does not allege sufficient facts against any other defendant for an excessive force claim. A core requirement for such a claim is that the defendant used force, *see Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009), and Ms. Taylor does not allege any other identified defendant used force against her. All other Eighth Amendment excessive force claims **are dismissed** for failure to state a claim upon which relief may be granted.

Finally, Fourteenth Amendment equal protection claims **shall proceed** against Sgt. Chaney, Officer Quinn, Officer Haulin, Officer Dukes, and Officer Pope for denying Ms. Taylor medical treatment when she cut herself and instead telling her that "the world would be a better place with one less f*g." While Ms. Taylor alleges Centurion and Nurse Southwood discriminate against suicidal inmates, mental health status is not a protected class under the Equal Protection Clause. All other Fourteenth Amendment equal protection claims **are dismissed** for failure to state a claim upon which relief may be granted.

## II. Motion to Reconsider the Appointment of *Pro Bono* Counsel

Ms. Taylor's motion to reconsider the appointment of *pro bono* counsel, dkt. 103, is **denied**. Ms. Taylor's motions for appointment of counsel, dkts. 81, 84, were denied because she had not

indicated whether she had attempted to contact another any attorneys before seeking Court assistance. Dkt. 93 at § II. In her motion to reconsider, Ms. Taylor asserts that she is not being provided envelopes for attorney contact. Dkt. 103. "'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it [her]self?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). An inability to send mail to attorneys may amount to effective preclusion from making reasonable attempts to obtain counsel.

Regardless of whether Ms. Taylor is effectively precluded from contacting attorneys—and the Court makes no such determination—she appears competent to litigate the case at this stage. "The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts v. Kidman*, 42 F.4th 755, 760 (7th Cir. 2022) (quoting *Pruitt,* 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan,* 987 F.3d at 682 (quoting *Pruitt,* 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend

8

litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

Ms. Taylor is experienced in *pro se* litigation.[4] She has repeatedly shown the Court, both in this case and generally, an ability to submit comprehensible filings and an ability to understand and respond to the Court and defendants. She indicated in her motion for appointment of counsel that she "cannot read the Court's orders because [she] needs glasses." Dkt. 81 at 3. Yet, she continues to directly respond to the Court's written orders, including in her motion to reconsider the appointment of *pro bono* counsel, dkt. 103, such that it is apparent that she is able to read the orders. At this stage of the litigation, the Court concludes that Ms. Taylor is competent to litigate this action on her own. Her motion to reconsider the appointment of *pro bono* counsel, dkt. 103, is **denied**, and the motions for appointment of counsel, dkts. 81, 84, remain denied without prejudice. Dkt. 93 at § II.

### III. Motion for the Court to Take Judicial Notice of Declarations

Ms. Taylor's motion for the Court to take judicial notice of declarations, dkt. 104, is **denied**. "Judicial notice is premised on the concept that certain facts of propositions exist which a court may accept as true without requiring additional proof from the opposing parties." *GE Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). It "merits the traditional caution is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Id.* (citing Fed. R. Evid. 201(b)). The Federal Rules of Evidence establish that a court may only "judicially notice a fact that is not subject to reasonable

---

[4] Cases which Ms. Taylor has filed and litigated just since 2022, excluding the cases severed from this action, include: *Taylor v. Reagle*, No. 2:24-cv-00115; *Taylor v. GEO Group, Inc.*, No. 1:22-cv-01875; *Taylor v. Verdon*, No. 1:22-cv-01789; *Taylor v. Liedtke*, No. 1:22-cv-01746; *Taylor v. Ind. Dep't of Corr.*, No. 1:22-cv-01496; *Taylor v. Rivera*, No. 1:22-cv-00809; *Taylor v. Centurion Med. Servs.*, No. 1:22-cv-00758; *Taylor v. Liedtke*, No. 1:22-cv-00652; *Taylor v. Centurion Med. Servs.*, No. 1:22-cv-00503; and *Taylor v. Liedtke*, No. 1:22-cv-00058.

dispute because it: (1) is generally known with the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questions." Fed. R. Civ. 201(b). The declarations which Ms. Taylor moves the Court to judicially notice, dkt. 104-1, fit in neither of these categories. It is improper to and the Court declines to take judicial notice of the facts purported in the declarations. However, the declarations shall remain on the docket, and they may be referenced or incorporated by Ms. Taylor when appropriate, and their value to an argument will be assessed at that time. In the meantime, her motion for the Court to take judicial notice of declarations, dkt. 104, is **denied**.

### IV. Conclusion

Plaintiff's motion for leave to amend complaint, dkt. [86], is **granted**.

The claims which shall proceed are the following: state law negligence claims against Sgt. Cheaney, Officer Quinn, Officer Haulin, Officer Dukes, and Officer Pope; First Amendment retaliation claims against Officer Quinn; Eighth Amendment deliberate indifference claims against Sgt. Chaney, Officer Quinn, Officer Haulin, and Officer Dukes; Eighth Amendment excessive force claims against Officer Quinn, Sgt. Chaney, and Officer Haulin; and Fourteenth Amendment equal protection claims against Sgt. Chaney, Officer Quinn, Officer Haulin, Officer Dukes, and Officer Pope.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. Specifically, claims against Nurse Southwood and Centurion are dismissed without prejudice as being misjoined. If Ms. Taylor believes that additional claims were alleged in the amended complaint, but not identified by the Court, she shall have **through November 10, 2025**, in which to file a motion to reconsider this Order. The deadline to further amend her complaint has passed. Dkt. 73 at 3.

Plaintiff's motions to reconsider the appointment of *pro bono* counsel, dkt. [103], and for the Court to take judicial notice of declarations, dkt. [104], are **denied**.

The **clerk is directed** to add Officer C. Pope as a defendant on the docket. The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to Officer Pope in the manner specified by Rule 4(d). Process shall consist of the amended complaint filed on September 9, 2025, dkt. [92], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order. The **clerk is directed** to serve Officer Pope, identified as an Indiana Department of Correction employee, electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Date:   10/23/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

GREG TAYLOR
883235
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

Electronic service to Indiana Department of Correction:
    Officer C. Pope
    (at Wabash Valley Correctional Facility)