UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| GREG TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00527-JRS-MKK |
| | ) | |
| CHANEY Sgt., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Starlene Greggie Taylor,[1] *see* dkt. 92 at 1, pursues 42 U.S.C. § 1983 and state law tort claims against Wabash Valley Correctional Facility ("Wabash Valley") officers. Defendants have moved for summary judgment. Dkt. 152. For the reasons below, that motion is **GRANTED in part** and **DENIED in part**.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It

[1] Ms. Taylor identifies as a transgender woman and uses feminine pronouns. The Court uses her preferred pronouns in this Order. *See Balsewicz v. Pawlyk*, 963 F.3d 650, 652 n.1 (7th Cir. 2020).

cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017) (internal citation and quotation marks omitted).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Fed. R. Civ. P. 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

**A. Background and parties**

The Wabash Valley "K" Housing unit ("KHU") is a mental health unit for inmates with particular mental health needs. Dkt. 153-3, ¶ 4. Some of the inmates may be on In-House Hold ("IHH") status, which limits inmates from moving around their housing unit at the same time as other inmates and provides them with a separate schedule to move around. *Id.*, ¶¶ 3–4. IHH status may be caused by numerous circumstances, including the IHH inmate's conduct, security concerns for the IHH inmate, or security concerns for other inmates. *Id.*, ¶ 5. Inmates on IHH status are allowed to take a shower during their Monday, Wednesday, and Friday out-of-cell time. *Id.*, ¶ 6. This opportunity can be constructively denied, however, by an inmate's uncompliant, combative, or aggressive behavior. *Id.*

Inmates' behavior during recreation periods in the KHU is subject to Indiana Department of Correction ("IDOC") policy. Dkt. 153-5, ¶ 7. If an inmate violated policy during recreation periods, the inmate could lose the remainder of the recreation period. *Id.* IDOC policy prohibits the passing of contraband or unauthorized items between inmates. *Id.*

At all times relevant, Defendant Casey Chaney was the correctional sergeant assigned to the KHU. Dkt. 153-1, ¶ 1. Defendants Gavyn Dukes, Seth Haviland, and Cameron Quinn were correctional officers assigned to the KHU.[2] Dkt. 153-2, ¶ 1; dkt. 153-3, ¶ 1; dkt. 153-5, ¶ 1. Defendant Cassandra Pope was also a correctional officer at Wabash Valley. Dkt. 153-4, ¶ 1. Her involvement with Ms. Taylor involved

[2] Officer Haviland is listed on the docket as "Haulin."

presiding over disciplinary hearings related to conduct reports. *Id.*, ¶ 12. At all times relevant, Ms. Taylor was housed in the KHU. Dkt. 153-3, ¶ 3.

**B. IHH status**

On November 11, 2023, Officer Quinn issued a misconduct report against Ms. Taylor on allegations that she had requested recreational activity, and, upon being informed that recreation would be held at a later time, she told Officer Quinn that she would sue Officer Quinn and that he would lose his job if recreation was not provided immediately. Dkt. 159-1 at 25. Officer Quinn cancelled her recreation for the day. *Id.* Ms. Taylor submits that Officer Quinn requested sexual favors during this exchange. *See id.* at 30. Ms. Taylor's appeal was denied, and she was referred for a hearing on the conduct report. *Id.* at 26–28.

On or about November 22, Ms. Taylor was placed on IHH status for her own safety due to her behavior. Dkt. 153-1, ¶ 8. She had been disruptive in the dayroom, loudly reading other inmates' charges despite instructions to stop. *Id.*

**C. Self-harm incident**

During a recreation period on November 25, 2023, Officer Quinn observed another inmate pass several stacks of papers or similar items to Ms. Taylor. Dkt. 153-5, ¶¶ 9–10. Officer Quinn understood this to be unauthorized passing between inmates, and he informed KHU staff that Ms. Taylor's recreation period would be cancelled. *Id.*, ¶¶ 11–12.

That evening, Officer Quinn conducted rounds in the KHU. *Id.*, ¶ 14. Ms. Taylor stopped Officer Quinn and asked whether she would receive recreation time

and a shower because her earlier recreation period had been cancelled. *Id.* Officer Quinn replied in the negative, and Ms. Taylor responded that, if she was not provided a shower, she would file a lawsuit against Officer Quinn. *Id.*, ¶¶ 15–16. Officer Quinn told Ms. Taylor to "suck his dick for a[ ] shower[.]" Dkt. 159-1 at 30. At some point, Officer Quinn authored a misconduct report against her. *Id.*

Ms. Taylor later asked Officer Quinn to contact a sergeant, Officer Quinn did so, and Sergeant Chaney arrived at Ms. Taylor's cell. Dkt. 153-5, ¶¶ 18–19. Ms. Taylor told the officers that she was suicidal and that she had cut herself. *Id.*, ¶ 20. Ms. Taylor submits that she slashed her arm with a razor blade in front of them at 11:45 p.m. Dkt. 159-1 at 30.[3] The officers instructed Ms. Taylor, who was not standing at the cell door or window, to approach the door or window so she could be visually assessed. *Id.*, ¶ 21. When Ms. Taylor approached the door, neither Officer Quinn nor Sergeant Chaney observed any fresh injury or blood. *Id.*, ¶ 22; dkt. 153-1, ¶ 16.

Officer Dukes, Officer Quinn, and Officer Haviland made rounds every half hour, making vulgar comments to Ms. Taylor. Dkt. 159-1 at 31; *see* dkt. 159-1 at 35. During their rounds, they looked into Ms. Taylor's cell; the light was on and Ms. Taylor was bleeding. Dkt. 159-1 at 31. However, Officer Dukes, Officer Quinn, and

---

[3] Ms. Taylor designates evidence of a "personal log book" of the November 25 and 26 events. Dkt. 159 at 2; dkt. 159-1 at 33–35. These are narratives she wrote on request for health care forms. Dkt. 159-1 at 33–35. This "log book" describes events with different details than the affidavit she filed under penalty of perjury. *Id.* at 34 (describing Sergeant Chaney's arrival at 12:00 p.m. and her self-harm at 12:15 p.m. instead of 11:45 p.m.) *c.f.* dkt. 159-1 at 33. This "log book" narrative is not filed under penalty of perjury. Insofar as Ms. Taylor designates this "log book" evidence as testimony, this testimony is neither sworn as true before a notary public nor sworn under penalty of perjury in the body of his statement, *see* 28 U.S.C. § 1746, either of which would have rendered her "log book" statement admissible testimony for summary judgment purposes.

Officer Haviland did not observe Ms. Taylor with a razor blade, bleeding, or otherwise injured. Dkt. 153-2, ¶ 16; dkt. 153-3, ¶ 17; dkt. 153-5, ¶ 23. At approximately 4:00 a.m., Ms. Taylor was beating on her cell door. Dkt. 159-1 at 23–24. An inmate passing by observed blood in her cell, and Ms. Taylor told him that she had cut her arm at 12:15 a.m. and had been begging and screaming for medical attention all night. *Id.* Two inmates described the blood as pooled on the floor and on the walls and toilet in her cell. *Id.* One inmate characterized the amount of blood to be as if "someone had been killed." *Id.* at 23.

Officer Quinn's shift ended at 6:00 a.m. on November 26. Dkt. 153-5, ¶ 30. At 6:00 a.m., Wabash Valley staff contacted medical staff upon finding that Ms. Taylor had blood in her cell and on her right arm. Dkt. 162-1 at 29–30. Ms. Taylor refused immediate care and denied that she was suicidal. *Id.* Ms. Taylor refused care and stated that she "was fine." *Id.* Medical staff provided Ms. Taylor Betadine and wound dressing for two cuts on her arm. *Id.* Staff noted the two cuts were 1.5 centimeters in size and that her blood had dried. *Id.*

Hours later, *id. c.f. id.* at 31–34, Ms. Taylor flagged down a nurse; she was now bleeding profusely from her arm with the provided dressing still in place. *Id.* at 33. Ms. Taylor was ultimately transported to Terre Haute Regional Hospital. Dkt. 159-1 at 1–7. At 11:10 a.m., hospital staff noted that the injuries had occurred "approximately 12 hours prior to admission." *Id.* at 5.

**D. OC Spray**

On December 15, Sergeant Chaney and Officer Haviland deployed OC spray through Ms. Taylor's cell's flood slot without any warning or order. *Id.* at 31. Sergeant Chaney and Officer Haviland then unsuccessfully searched her cell for razors. *Id.* The cell was not decontaminated. *Id.* Ms. Taylor sought video footage of the incident from Officer Pope, and she denied the requests and stated, "maybe you shouldn't be such a smart mouth, faggot." *Id.* at 32.

Officer Pope, Officer Quinn, Officer Haviland, Officer Dukes, and Sergeant Chaney all made vulgar and homophobic comments to Ms. Taylor during her time at Wabash Valley.

## III.
## Discussion

**A. First Amendment**

Ms. Taylor proceeds on a First Amendment retaliation claim against Officer Quinn for misconduct reports she authored in retaliation for her litigiousness. Dkt. 107 at 6. To succeed on a First Amendment retaliation claim, Ms. Taylor must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) she suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If she does so, the burden shifts to the defendants to show that the deprivation would have occurred even if she had not engaged in protected activity. *Manuel v. Nalley*,

966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that filing lawsuits is protected First Amendment activity, so the Court focuses on the second and third elements. Additionally, although Ms. Taylor threatened a lawsuit preceding the November 11 conduct report, in *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009), the Seventh Circuit indicated that threatening to file a lawsuit is not a protected First Amendment activity and thus, cannot substantiate a retaliation claim. *See Braboy v. Ill. Dep't of Corr.*, 2017 U.S. Dist. LEXIS 160021, at *26 (S.D. Ill. Sept. 28, 2017).

**i. Deprivation Likely to Deter Future First Amendment Activity**

Whether allegedly retaliatory conduct "would likely deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020).

**a. Motivating Factor**

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the

decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

"Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680–81 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed.)

Ms. Taylor designates no evidence from which a reasonable jury could find that Officer Quinn's conduct reports were motivated by her litigation activity. Beyond her threats to file suit, the designated record is devoid of any evidence of Ms. Taylor's lawsuits or any connection between them and Officer Quinn's decision to enter conduct reports against her. Ms. Taylor's First Amendment claim against Officer Quinn fails on the motivating factor element. Defendants' motion for summary judgment as to Ms. Taylor's First Amendment claim is therefore **granted**.

**B. Eighth Amendment deliberate indifference**

Ms. Taylor proceeds on Eighth Amendment deliberate indifference claims against Sergeant Chaney, Officer Quinn, Officer Haviland, Officer Dukes, and Officer Pope for their failure to sufficiently treat her serious mental health needs and self-harming behavior. Dkt. 107 at 6. The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888−89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Ms. Taylor's general suicidality was objectively serious.[4] To avoid summary judgment, then, the record must allow a reasonable jury to conclude that the defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Ms. Taylor]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

[4] The Court does not make this assumption about Ms. Taylor's cuts on her arm, as discussed below.

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Ms. Taylor "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Where the harm at issue is a suicide or attempted suicide," deliberate indifference "requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019).

**i. Defendants Quinn and Chaney**

The designated record reflects that Ms. Taylor informed Officer Quinn of her suicidal thoughts when Officer Quinn denied her a shower on November 25. After Officer Quinn contacted Sergeant Chaney and Sergeant Chaney arrived at Ms. Taylor's cell, she again expressed that she was suicidal. She submits she then cut herself "in their direct line of sight." Dkt. 159-1 at 30. Upon her informing the officers that she had cut herself, which, the record reflects, the officers had not seen, dkt. 153-1, ¶ 16, dkt. 153-5, ¶ 23, the officers did not observe any blood or injury, nor is there evidence that they observed a razor blade. Dkt. 153-1, ¶ 12; *see* dkt. 153-5, ¶ 23. Their "failure to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot be condemned as the inflection of punishment[.]" *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). Sergeant Chaney and Officer Quinn responded to Ms. Taylor's assertion that she had cut herself by ordering her to approach the cell door, observing her at the cell door, and determining there to

be no visible evidence that such self-harm had occurred. The only reasonable inference that a jury could draw is that Sergeant Chaney and Officer Quinn reasonably responded to Ms. Taylor's assertion by investigating it and were not subjectively aware that Ms. Taylor was at a substantial risk of committing suicide at the time.

**ii. Defendants Dukes, Quinn, and Haviland**

Officer Dukes, Officer Quinn, and Officer Haviland made rounds throughout that night, and Ms. Taylor was beating on her cell door at approximately 4:00 a.m. and told another inmate that she had been screaming for medical attention all night. The designated record reflects that, while Ms. Taylor was not observably bleeding earlier in the night, there was blood present on her person and in her cell by 4:00 a.m. Like Officer Quinn and Sergeant Chaney earlier in the night, these officers making rounds submit evidence that they did not observe Ms. Taylor with a razor blade, bleeding, or otherwise injured. Dkt. 153-2, ¶ 16; dkt. 153-3, ¶ 17; dkt. 153-5, ¶ 23. Ms. Taylor, contrarily, submits that the officers looked into her cell while she was bleeding at least every half-hour. Dkt. 159-1 at 31. She does not designate evidence that she was expressing suicidality during these rounds. *See* dkt. 159-1 at 23–24 (Ms. Taylor told another officer that she had been calling for medical attention and not that she was to engage in further self-harm).

The defendants argue that Ms. Taylor's cuts were not objectively serious under the Eighth Amendment. When assessing the objective prong, the Court "look[s] for physical injury that a reasonable doctor or patient would find important and worthy

of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (cleaned up). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The Court finds that Ms. Taylor's two cuts of 1.5 centimeters were not objectively serious. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("trivial—indeed, almost nonexistent" "injuries consist[ing] only of minor scratches, quickly and easily treated with a gauze bandage" do not constitute a serious medical need); *Davis v. Jones*, 936 F.2d 971, 972–73 (7th Cir. 1991) (noting that a one-inch cut to plaintiff's temple was not sufficiently serious under the Eighth Amendment); *Fitzpatrick v. Nys*, 2020 U.S. Dist. LEXIS 180425, at *7–8 (E.D. Wis. Sept. 30, 2020) (an inmate making small cuts on his arm with a razor is not objectively serious under the Eighth Amendment).

It is undisputed that Ms. Taylor's wounds bled that night. However, even considering Ms. Taylor's evidence that an inmate described the amount of blood to reflect that of a killing, bleeding, in and of itself, does not make an injury objectively serious. *See Davis*, 936 F.2d 972–73 (finding a bleeding head laceration of one inch was not objectively serious). Although there is evidence that Ms. Taylor's blood pooled—with no evidence as to the size or depth of these pools—she submits no

evidence or argument that she was in pain.[5] She does submit that she requested medical attention, but she does not submit that she experienced substantial pain or other effects.

The two 1.5-centimeter cuts were treated with medication and wound dressing to be applied by Ms. Taylor. A jury would necessarily construe her refusal of medical attention, her statement that she was fine, and medical staff's determination that it was appropriate for her to dress the wound herself, in addition to the cuts' relative small size, to reflect that the injuries she sustained overnight were not objectively serious.

Ms. Taylor's injuries were apparently aggravated such that she bad bleeding profusely after she applied the dressing. There is no evidence that any defendant interacted with Ms. Taylor after this change in circumstances, which resulted in a hospital visit.

**iii. Defendant Pope**

Ms. Taylor designates no evidence that Officer Pope was involved in the November 25 and 26 events. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017).

Accordingly, Defendants' motion for summary judgment as to Ms. Taylor's Eighth Amendment deliberate indifference claims is **granted**.

[5] Ms. Taylor did report pain at the hospital, after her already-treated cuts began bleeding profusely. *See* dkt. 159-1 at 1.

### C. Eighth Amendment excessive force

Ms. Taylor proceeds on Eighth Amendment excessive force claims against Officer Quinn, Sergeant Chaney, and Officer Haviland. Dkt. 107 at 7. The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good- faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

Defendants submit generalized argument about the propriety of OC spray use, without designating any evidence to contradict Ms. Taylor's allegations about the December 15 OC spray deployment without warning or order by Sergeant Chaney

and Officer Haviland. Ms. Taylor does not designate evidence that Office Quinn was involved, and Defendants' motion for summary judgment on Ms. Taylor's Eighth Amendment excessive force claim against Officer Quinn is therefore **granted**.

Defendants argue that they are subject to qualified immunity. Yet, it is clearly established that the use of OC spray should generally follow adequate warnings. *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (force "including mace and tear gas . . . should generally follow adequate warnings"). On the designated record, a reasonable jury could conclude that Sergeant Chaney and Officer Haviland violated Ms. Taylor's clearly established Eighth Amendment rights. Their motion as to the Eighth Amendment excessive force claims against Sergeant Chaney and Officer Haviland are **denied**.

**D. Fourteenth Amendment equal protection**

Ms. Taylor proceeds on Fourteenth Amendment equal protection claims against Sergeant Chaney, Officer Quinn, Officer Haviland, Officer Dukes, and Officer Pope for denying her medical treatment when she cut herself and making homophobic comments. Dkt. 107 at 7. The Fourteenth Amendment's Equal Protection Clause protects one from disparate treatment based on membership in a protected class. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). To support an equal protection claim, a plaintiff must show that (1) she was a member of a protected class, (2) she was treated differently from a similarly-situated member of an unprotected class, and (3) the defendant was motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). Sexual orientation is a protected class.

*See Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) ("The Equal Protection Clause protects against . . . discrimination on the basis of sexual orientation").

Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citations omitted). Therefore, a reasonable jury could not find evidence of use of homophobic language to violate equal protection.

"[A] plaintiff wishing to sustain an equal protection claim of sexual harassment must show both 'sexual harassment' and an 'intent' to harass based upon that plaintiff's membership in a particular class of citizens." *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). Ms. Taylor designates evidence that Officer Quinn requested sexual favors from her. Given the inextricable link between sexuality and sex, a reasonable jury could find that Officer Quinn's requests for sexual favors from Ms. Taylor served as intentional harassment based on Ms. Taylor's sexual orientation. Defendants' motion for summary judgment as to Ms. Taylor's equal protection claim against Officer Quinn is **denied**.

However, there is no evidence that Sergeant Chaney, Officer Haviland, Officer Dukes, or Officer Pope treated Ms. Taylor differently than any other inmate. Ms. Taylor fails to designate evidence of how any other inmate was treated when self-harming or expressing suicidality and thus fails to carry her burden as to equal protection claims against these defendants. Defendants' motion for summary

judgment as to Ms. Taylor's Fourteenth Amendment equal protection claims is therefore **granted**.

**E. Negligence**

Finally, Ms. Taylor proceeds on state law negligence claims against Sergeant Chaney, Officer Quinn, Officer Haviland, Officer Dukes, and Officer Pope. Dkt. 107 at 5. Defendants argue that Ms. Taylor's negligence claims are barred by the Indiana Tort Claims Act ("ITCA"), which prohibits lawsuits against state employees for acts taken within the scope of their employment. Ind. Code § 34-13-3-5(b); *see also Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). Conduct within the "scope of employment" is "conduct of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc.*, 727 N.E.2d at 452. Generally speaking, "whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020) (internal quotation omitted). But when the facts are undisputed, the Court may decide as a matter of law whether the acts were in the scope of employment. *See id.* (citing *Cox v. Evansville*, 107 N.E.3d 453, 460 (Ind. 2018)).

Here, the undisputed facts are clear that Officer Pope, Sergeant Chaney, Officer Haviland, and Officer Dukes were acting within the scope of their employment. All of their conduct was either in the same general nature of the conduct authorized by their roles or incidental to it. They were working at Wabash Valley and generally performing their job duties when engaging all acts on the record.

Defendants' motion for summary judgment as to Ms. Taylor's negligence claims against Officer Pope, Sergeant Chaney, Officer Haviland, and Officer Dukes is **granted**.

The Court declines to determine whether Officer Quinn's requests for sexual favors fell within the scope of his employment. Defendants' motion for summary judgment as to Ms. Taylor's negligence claim against Officer Quinn is **denied**.

## IV.
## Conclusion

Defendants' motion for summary judgment, dkt. [152], is **GRANTED in part** and **DENIED in part**. Ms. Taylor continues to proceed on a state law negligence claim against Officer Quinn, Eighth Amendment excessive force claims against Sergeant Chaney and Officer Haviland, and a Fourteenth Amendment equal protection claim against Officer Quinn.

The **clerk is directed** to terminate Dukes and Cassandra Pope as defendants on the docket.

The Court continues to attempt to recruit counsel for Ms. Taylor. Dkt. 169. The magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings after counsel is recruited.

**IT IS SO ORDERED.**

Date: 11/25/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

GREG TAYLOR
883235
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

All electronically registered counsel

U.S. Magistrate Judge M. Kendra Klump